UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENA L. HILL,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>        Defendant. | Case No. CV 12-6763-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

On August 13, 2012, plaintiff Lena Hill filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the residual functional capacity ("RFC") finding by the Administrative Law Judge ("ALJ") was supported by substantial evidence; and (2) whether the ALJ properly discounted plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 4-11; Memorandum in Support of Defendant's Answer ("Def. Mem.") at 2-10.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the RFC finding by the ALJ was supported by substantial evidence, but the ALJ did not give clear and convincing reasons for discounting plaintiff's credibility. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-one years old on the date of her February 15, 2011 administrative hearing, has a year of college education. *See* AR at 62, 137, 150. Her past relevant work includes employment in customer service and optical sales. *Id.* at 21, 26, 62-63, 145.

On February 4, 2009, plaintiff applied for DIB, alleging that she had been disabled since September 9, 1989 due to Lyme disease, joint pains, neurological disease, weak knees, injuries to her spine and brain, body inflammation, and meningitis symptoms. *Id.* at 19, 109, 137, 144. Plaintiff's application was denied initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 84-94.

On February 15, 2011, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 58-81. The ALJ also heard testimony from John Meyers, a vocational expert. *Id.* at 73-81. On March 23, 2011, the ALJ

denied plaintiff's request for benefits. *Id.* at 16-27.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has engaged in substantial gainful activity since the alleged disability onset date of September 9, 1989. *Id.* at 21. The ALJ found plaintiff had engaged in substantial gainful activity from February 2004 through December 1, 2005. *Id.*

At step two, the ALJ found that plaintiff suffered from severe impairments consisting of: obesity, decreased kidney function, headaches, and hypertension. *Id.* at 22.

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's RFC[1] and determined that – from June 23, 2004 (the day following her prior denial) through the date of decision – she had the RFC to perform medium work, except that she was limited to: lifting/carrying a maximum of 25 pounds frequently and 50 pounds occasionally; standing/walking and sitting for six hours in an eight hour day; and performance of simple routine tasks. *Id.* at 23.

At step four, the ALJ found that since December 2, 2005 (the day after plaintiff last engaged in substantial gainful activity), plaintiff had been unable to perform any past relevant work. *Id.* at 25-26.

At step five, the ALJ considered plaintiff's age, education, work experience,

---

[1] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

and RFC, and concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." *Id*. at 26. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 27.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ's Residual Functional Capacity Assessment Is Supported by Substantial Evidence

Plaintiff contends that the ALJ's RFC assessment lacks the support of substantial evidence. Pl. Mem. at 4-7. Specifically, plaintiff contends that the ALJ erred by (1) not finding that plaintiff's knee impairment was severe; and (2) improperly considering the effects of plaintiff's obesity with her other impairments on her ability to work. *Id.* The court disagrees, for the reasons discussed below.

#### 1. The ALJ Did Not Err by Failing to Find Plaintiff's Knee Impairment Was Severe

The inquiry at step two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). The step two inquiry is defined as "'a de minimis screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28).[2]

In support of the claim that plaintiff's knee impairment qualifies as severe, plaintiff relies only on Dr. Oster's finding of bilateral crepitation on the flexion and extension of plaintiff's knees. Pl. Mem. at 5; *see* AR at 567. The ALJ rejected this finding, stating that Dr. Oster indicated permanent disability "despite a dearth of objective findings." AR at 25. In doing so, the court finds that the ALJ properly relied on the opinions of Dr. Sheehy, Dr. Wallack, and Dr. Laichtman.

"Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). When evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Nonexamining physicians' opinions "with nothing more" cannot constitute substantial evidence, but reports of nonexamining physicians may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. *Andrews*, 53 F.3d at 1041-42.

Neurologist Dr. Sheehy examined plaintiff in April 2009. AR at 509-11. He found that plaintiff had a "constellation of chronic complaints" but only in the setting of "an unremarkable neurologic exam[,] normal mini-mental status exam,

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

and unremarkable MRI." *Id.* at 511.  Although he had no experience in diagnosing or treating Lyme disease, Dr. Sheehy also found that based upon plaintiff's normal Lyme disease titers and MRI scan of the brain, he thought it unlikely any or all of her symptoms were results of her previous Lyme disease.  *Id.*  Dr. Sheehy had no specific neurologic therapy to recommend and did not recommend any additional studies regarding plaintiff's memory loss.  *Id.*

Consultative examiner Dr. Wallack also examined plaintiff in April 2009.  *Id.* at 515-19.  Dr. Wallack noted that plaintiff "ambulate[d] easily into the exam room" and "[was] able to get on the exam table without any difficulty."  *Id.* at 516.  He concluded that there were no objective limiting factors for plaintiff's alleged back and knee pain.  *Id.* at 518.  Based on a lack of objective limiting factors, Dr. Wallack found no limitations for standing, walking, sitting, lifting, and carrying.  *Id.* at 519.  He also found plaintiff to have no postural, manipulative, and workplace environmental limitations.  *Id.*

State agency medical consultant Dr. Laichtman reviewed plaintiff's record on May 2009, and he concluded that plaintiff could perform medium work.  *Id.* at 520-25.  Dr. Laichtman reported that plaintiff was limited to occasionally lifting and/or carrying 50 pounds, frequently lifting and/or carrying 25 pounds, and standing, walking, and/or sitting (with normal breaks) for about six hours in an eight hour work day.  *Id.* at 521.

Two examining physicians, Dr. Sheehy and Dr. Wallack, did not find that plaintiff had a severe knee impairment.  Both physicians based their opinions on independent clinical findings of plaintiff's normal Lyme disease titers and unremarkable MRI scan.  AR at 511, 515.  Dr. Wallack conducted a comprehensive internal medicine evaluation, and his own clinical findings revealed no objective limiting factors for plaintiff's alleged knee pain.  *Id.* at 518.  Dr. Wallack additionally observed plaintiff to have a normal gait and no difficulty climbing onto the exam table.  *Id.* at 516.  Nonexamining physician Dr.

Laichtman's RFC assessment of plaintiff is supported by and consistent with the medical evidence in the record.

Though Dr. Oster found bilateral knee crepitation in plaintiff, it is a contradicted opinion. The opinions and independent clinical findings of Dr. Sheehy and Dr. Wallack, along with Dr. Laichtman's report, constituted substantial evidence on which the ALJ properly relied for his RFC assessment. The evidence here is susceptible to more than one rational interpretation and can reasonably support either affirming or reversing the ALJ's decision. Thus, the court may not substitute its judgment for that of the ALJ, and the ALJ's conclusion must stand. *See Morgan*, 169 F.3d at 601; *Aukland*, 257 F.3d at 1035.

Moreover, despite finding that plaintiff's knee impairment was not severe, the ALJ nonetheless resolved step two in plaintiff's favor, determining that she suffered from the severe impairments of obesity, decreased kidney function, headaches, and hypertension. AR at 22. Therefore, even if the court were to find, which it does not, that the ALJ erred in finding plaintiff's knee impairment was not severe at step two, the error would have been harmless. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that any error in omitting an impairment from the severe impairments identified at step two was harmless where the step was resolved in the claimant's favor).

### 2. The ALJ Properly Considered the Effect of Plaintiff's Obesity With Her Other Impairments on Her Ability to Work

Plaintiff contends the ALJ failed to properly evaluate her obesity and its interactive effects on her ability to work. Pl. Mem. at 5-7. Also, plaintiff contends that the ALJ provided no analysis of obesity in his discussion, thus failing to meet the requirements as set forth in SSR 02-1p. *Id.* at 6.

Here, the record shows that, although plaintiff never raised the issue of her weight, the ALJ nonetheless examined the record, acknowledged the physicians' findings indicating plaintiff's obesity, and determined that plaintiff's obesity was a

severe impairment at step two. AR at 22, 58-81, 143-44. The record further indicates that, although several of plaintiff's physicians noted her obesity, none opined that plaintiff's obesity contributed to her limitations. *See* AR at 509-11, 515-25, 567-68. The ALJ specifically noted that Dr. Wallack reported obesity but no physical limitations. *Id.* at 24. Plaintiff cites to no evidence of any physician or other medical provider indicating that plaintiff's obesity exacerbated her impairments or resulted in any functional limitation. *See* Pl. Mem. 1-13.

Because plaintiff did not provide any evidence of functional limitation due to obesity that would have impacted the ALJ's analysis, the ALJ was not required to consider the effect of plaintiff's obesity in combination with her other impairments. *See Garcia v. Comm'r of Soc. Sec. Admin.*, 498 F. App'x 710, 712 (9th Cir. 2012); *Burton v. Barnhart*, 310 F. App'x 960 n.1 (9th Cir. 2009) (finding the ALJ did not err in failing to consider adequately claimant's obesity when claimant does not specify how his obesity limits his functional capacity or how it exacerbates his currently existing condition).

Plaintiff does cite to Dr. Oster's lone finding of knee crepitation and contends that with the added impairment of obesity "it borders on the fantastic that [plaintiff] could have stood for 6 hours a day." Pl. Mem. at 7. But as discussed above, the ALJ properly gave little weight to Dr. Oster's findings because of a lack of objective medical evidence supporting the opinion, instead relying on the opinions of Dr. Sheehy, Dr. Wallack, and Dr. Laichtman. *See* AR at 25. Moreover, plaintiff does not challenge the ALJ's rejection of Dr. Oster's opinion. *See* Pl. Mem. at 1-13. Without Dr. Oster's finding of knee crepitation, plaintiff is unable to show how obesity, in combination with other impairments, limited her functioning. *See Hoffman v. Astrue*, 266 F. App'x 623, 625 (9th Cir. 2008) (holding that ALJ's failure to consider the claimant's obesity in relation to the RFC determination was proper because plaintiff failed to show how obesity, in combination with other impairments, limited her functioning).

Based on the record, the ALJ adequately considered plaintiff's obesity in his RFC determination by finding plaintiff's obesity as severe in step two and relying on physician's findings who accounted for plaintiff's weight in their opinions. *See Burch*, 400 F.3d at 684; *Garcia*, 498 F. App'x at 712 (ALJ did not fail to consider obesity when he recognized claimant's obesity as severe and relied on functional limits suggested by doctors who recognized it). Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider. *See Burch*, 400 F.3d at 684. Accordingly, the ALJ did not commit reversible error in connection with his consideration of plaintiff's obesity.

In sum, the ALJ's RFC determination was supported by substantial evidence. He did not err by failing to find plaintiff's knee impairment as severe, and he properly considered plaintiff's obesity in assessing her work limitations.

**B.    The ALJ's Credibility Determination Was Not Supported by Substantial Evidence**

Plaintiff argues that the ALJ failed to make a proper credibility determination. Pl. Mem. at 7-11. Specifically, plaintiff contends that the ALJ did not provide clear and convincing reasons that are supported by substantial evidence for discounting plaintiff's subjective pain testimony. *Id.* The court agrees.

An ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

In his decision, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," which "satisfie[s] the first [step] of the ALJ's inquiry regarding the credibility of [plaintiff]'s complaints." AR at 25; *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Because the ALJ did not find any evidence of malingering, the ALJ was required at the second step to provide clear and convincing reasons for discounting plaintiff's credibility. *See Benton*, 331 F.3d at 1040.

At step two, the ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 25. The ALJ provided three reasons for discounting plaintiff's credibility: (1) the lack of strong pain medications; (2) plaintiff's "activities of daily living [that] are consistent with a residual functional capacity for medium work"; and (3) "minimal objective limiting factors." *Id*. The court finds that the ALJ's first and second reasons are not clear and convincing, and the ALJ's third reason alone cannot constitute substantial evidence to discount plaintiff's credibility.

First, the ALJ found plaintiff's claims of disabling pain were inconsistent with her lack of strong pain medication. *Id.* "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Also, a lack of

11

strong pain medication can be a clear and convincing reason supporting an ALJ's conclusion of adverse credibility. *See Trisdale v. Astrue*, 334 F. App'x 85, 86 (9th Cir. 2009); *Parra*, 481 F.3d at 750-51 (finding over-the-counter pain medication as evidence of conservative treatment). But a claimant's failure to take stronger pain medication does not necessarily discredit allegations of pain. *See Vasquez v. Astrue*, 373 F. App'x 731, 732 (9th Cir. 2010).

Here, plaintiff took ibuprofen (800 mg), Valium, Vicodin, gabapentin, nabumetone, and hydrocodone for her pain. AR at 149, 245, 325. None of plaintiff's medications is over-the-counter medication that would constitute evidence of conservative treatment. *See Horton v. Astrue*, 252 F. App'x 160, 161 (9th Cir. 2007) (it is error for an ALJ to characterize 800 mg tablets of ibuprofen on a prescription basis as "over-the-counter"). Plaintiff took hydrocodone and Vicodin three times a day, both of which are narcotic pain relievers that cannot be properly characterized as routine or conservative. AR at 65, 325; *Lasane v. Colvin*, 2013 WL 3121315, at *4 (C.D. Cal. June 19, 2013); *Hung Thanh Le v. Astrue*, 2010 WL 1854081, at *6 (C.D. Cal. May 6, 2010) ("Vicodin qualifies as strong medication to alleviate pain."); *see also Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (characterizing hydrocodone as a "strong pain reliever"). Plaintiff also took Valium, a strong narcotic analgesic. AR at 149, 325; *see Kager v. Astrue*, 256 F. App'x 919, 923 (9th Cir. 2007); *Cunningham v. Astrue*, 2010 WL 4916629, at *2 (C.D. Cal. Dec. 1. 2010). Without having to consider the rest of plaintiff's medication, plaintiff's use of Valium, Vicodin, and hydrocodone establishes that the ALJ erred when stating "[t]here is a lack of strong pain medications." Accordingly, the ALJ's first proffered reason fails to be clear and convincing.

Second, the ALJ found that plaintiff's daily activities are consistent with an RFC for medium work. AR at 25. The ALJ may properly consider inconsistencies between plaintiff's pain allegations and his daily activities. *See Thomas v.*

*Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)*; see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

The ALJ in the instant case failed to make any specific findings relating to plaintiff's daily activities or their transferability to the work place.  *See* AR at 19-27.  The only statement in the ALJ's opinion regarding plaintiff's daily activities is "the claimant's activities of daily living are consistent with a residual functional capacity for medium work, and do not indicate pain or vertigo so severe and frequent as to prevent such work." *Id.* at 25.  But the ALJ did not explain or even mention which of plaintiff's daily activities he found to be inconsistent with plaintiff's alleged symptoms, leaving this court to guess.  This is insufficient.  *See Morgan*, 169 F.3d at 599 (ALJ "must provide 'specific, cogent reasons for the disbelief'" of the plaintiff's subjective complaints) (citations omitted).  The ALJ's failure to articulate which of plaintiff's daily activities are inconsistent with plaintiff's complaints, and how, leaves his reference to plaintiff's daily activities well short of constituting a clear and convincing reason for discounting plaintiff's credibility.

Third, the ALJ found that the objective medical evidence was "substantially disproportionate" to symptoms reported by plaintiff.  AR at 25.  Conflict between plaintiff's testimony of subjective complaints and the objective medical evidence in the record is a relevant factor the ALJ may consider.  *Morgan*, 169 F.3d at 600.  But lack of objective medical evidence for the severity of a claimant's symptoms by itself cannot establish a clear and convincing reason for discounting a claimant's credibility, though it can be one of the factors.  *See Bunnell*, 947 F.2d at

13

345 ("[O]nce the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." (citation omitted)); SSR 96-7P, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

Having found that the ALJ erred by discounting plaintiff's credibility based on her supposed lack of strong medication and on her activities of daily living, the court does not proceed with an evaluation of the objective medical evidence determination by the ALJ. Because the ALJ's first and second proffered reasons fail to be clear and convincing, the ALJ's final reason, that there "have been minimal objective limiting factors," cannot be sufficient by itself. Consequently, the ALJ did not provide clear and convincing reasons supported by substantial evidence for discounting plaintiff's credibility.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 594, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were

properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in discounting plaintiff's credibility. On remand, the ALJ shall reconsider plaintiff's subjective complaints, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting it. The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: July 25, 2013

SHERI PYM
United States Magistrate Judge